UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KRISTEN SHAW,

        Plaintiff,

v.

NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES;
WILLIS LEGGETT, individually and in his official
capacity; DAWN WELLINGTON, individually and
in her official capacity; JAMES WRIGHT,
individually and in his official capacity; and
ISAIAH BROWN, individually and in his official
capacity,

        Defendants.

1:25-cv-00066 (AMN/ML)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LAMARCHE SAFRANKO LAW PLLC**<br>987 New Loudon Road<br>Cohoes, New York 12047<br>*Attorneys for Plaintiff* | **JOSHUA R. FRIEDMAN, ESQ.** |
| **HON. LETITIA JAMES**<br>New York State Attorney General<br>The Capitol<br>Albany, New York 12224<br>*Attorneys for Defendants* | **ERIN P. MEAD, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

## I.      INTRODUCTION

On January 14, 2025, Plaintiff Kristen Shaw commenced this action against the New York

State Office for People with Developmental Disabilities ("OPDD"), and against Willis Leggett,

Dawn Wellington, James Wright, and Isaiah Brown individually and in their official capacities

("Individual Defendants") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and 42 U.S.C. § 1983 ("Section 1983"), in connection with alleged harassment, discrimination, and retaliation she faced while employed at OPDD. *See* Dkt. No. 1 ("Complaint"). On March 27, 2025, Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Procedure. *See* Dkt. No. 11 ("Motion"). On March 30, 2025, Plaintiff filed an amended complaint. Dkt. No. 15 ("Amended Complaint").

On May 1, 2025, Plaintiff opposed the Motion, *see* Dkt. No. 24, and on May 8, 2025, Defendants filed a reply in support of the Motion. Dkt. No. 25. With this Court's permission, Plaintiff filed a sur-reply in further opposition to the Motion on May 21, 2025. Dkt. No. 29.

For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

## II.   BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *See Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.   The Parties

Plaintiff is a resident in the County of Albany, New York and was an employee at OPDD from April 28, 2016 until her termination on February 15, 2022. Dkt. No. 15 at ¶¶ 4-5, 131.

OPDD is a New York State agency that employs more than 20,000 individuals throughout the State of New York and maintains its principal place of business in the County of Albany, New York. *Id.* at ¶¶ 6, 8. OPDD owns and operates residential group homes throughout New York

State that serve individuals with developmental disabilities, including a facility located at 397 Delaware Avenue in Delmar, New York ("Delmar Facility").  *Id.* at ¶ 9.

Defendants Leggett, Wellington, Wright, and Brown are employed as supervisors at OPDD and possessed supervisory authority over Plaintiff.  *Id.* at ¶¶ 11, 13, 15, 17.  Plaintiff was assigned to work alongside and under the direct supervision of Defendant Leggett at the Delmar Facility and was also placed under the supervision of Defendants Wright, Brown, and Wellington.  *Id.* at ¶¶ 28, 29.

### B.  The Amended Complaint

Plaintiff brings Title VII and NYSHRL claims against all Defendants, as well as a Section 1983 equal protection claim against the Individual Defendants, in connection with alleged sexual harassment, discrimination, and retaliation that Plaintiff experienced during her employment with OPDD at the Delmar Facility.  *See generally id.*

The Court presumes the Parties' familiarity with the facts as alleged in the Amended Complaint.  In summary, on April 28, 2016, Plaintiff was hired as an employee of OPDD and was assigned to work at the Delmar Facility under the direct supervision of Defendant Leggett.  *Id.* at ¶¶ 26-28.  Plaintiff alleges that shortly after beginning her employment, Defendant Leggett asked Plaintiff to go out with him on a date.  *Id.* at ¶ 30.  Despite politely declining, Defendant Leggett continued to pressure Plaintiff to enter into a romantic relationship with him.  *Id.* at ¶¶ 31-32. According to Plaintiff, beginning in May 2016, Defendant Leggett repeatedly called Plaintiff on her personal cellphone and made inappropriate sexual remarks to her multiple times a week at the Delmar Facility, despite Plaintiff's repeated requests that he stop.  *Id.* at ¶¶ 33-38.  Plaintiff also alleges that Defendant Leggett regularly subjected Plaintiff to unwelcome, inappropriate physical contact on no fewer than ten occasions from May 2016 through 2021.  *Id.* at ¶¶ 39-40.

In September 2017, Plaintiff reported Defendant Leggett's conduct to Defendant Wright, but no corrective measures were taken by Defendant Wright, OPDD, or any other supervisor, and Plaintiff continued to be subjected to Defendant Leggett's sexual harassment. *Id.* at ¶¶ 43, 46. Plaintiff further alleges that Defendant Leggett confronted Plaintiff shortly after she reported his conduct to Defendant Wright, physically grabbed Plaintiff's arm, demanded to know why she reported him for harassment, and accused her of being in a romantic relationship with P.M., another coworker. *Id.* at ¶¶ 47-48. Later that month, Plaintiff alleges that Defendant Leggett physically assaulted P.M. in retaliation for Plaintiff resisting and reporting Defendant Leggett's sexual harassment. *Id.* at ¶ 52.

In January 2019, Defendant Leggett was promoted, which gave him more authority over Plaintiff. *Id.* at ¶ 53. According to Plaintiff, Defendants Wright, Brown, and Wellington participated in the deliberations regarding Defendant Leggett's promotion, while being aware of Plaintiff's complaints regarding his alleged harassment, discrimination, and retaliation. *Id.* at ¶¶ 54-55. On June 28, 2019, after Defendant Leggett continued to harass, discriminate, and retaliate against Plaintiff, Plaintiff reported his conduct to Defendant Wellington, who told her that necessary action would be taken. *Id.* at ¶¶ 58-62. However, the following day, on June 29, 2019, Defendant Leggett berated Plaintiff at the Delmar Facility, screaming inches from her face, and as Plaintiff attempted to flee the room, Defendant Leggett forcefully slammed the door on her foot, which resulted in severe pain and nerve damage to Plaintiff. *Id.* at ¶¶ 63-64. Plaintiff again reported Defendant Leggett's conduct to Defendant Wellington, who advised her to go home for the day, but as Plaintiff was preparing to leave, Defendant Leggett sexually assaulted her again. *Id.* at ¶¶ 65-69. The following day, on June 30, 2019, Plaintiff again spoke with Defendant Wellington and requested that she take corrective action. *Id.* at ¶ 70. Defendant Wellington stated

that she would take action regarding Defendant Leggett's slamming of the door on Plaintiff's foot, but declined to report Defendant Leggett's other harassment to her superiors because she was afraid that she would face disciplinary consequences.  *Id.* at ¶¶ 71-72.

One week later, on July 6, 2019, Plaintiff was summoned to a meeting with Defendants Wellington and Leggett where she received disciplinary counseling and was informed that she was being written up for allegedly failing to follow the proper chain of command when contacting Defendant Wellington regarding Defendant Leggett.  *Id.* at ¶¶ 73-77.  The following day, on July 7, 2019, Plaintiff sent an email to several senior management officials at OPDD regarding Defendant Leggett's harassment and the lack of corrective action taken by OPDD, but she did not receive a response.  *Id.* at ¶ 85.  According to Plaintiff, the Individual Defendants were aware of Plaintiff's email, but purposefully ignored it.  *Id.* at ¶ 86.

On July 15, 2019, Plaintiff reported Defendant Leggett's conduct to two OPDD Human Resources representatives, but in response, they informed Plaintiff that they were not the appropriate individuals to receive sexual harassment complaints, and provided Plaintiff with a phone number for the Governor's Office of Employee Relations ("GOER").  *Id.* at ¶¶ 87-88.  The representatives further advised Plaintiff to complete a workplace violence form and worker's compensation paperwork due to her physical injuries caused by Defendant Leggett, and that Defendant Wellington needed to complete an incident report.  *Id.* at ¶ 89.  On July 16, 2019, Plaintiff requested that Defendant Wellington complete the incident report and the supervisor portion of the workplace violence form, but she refused.  *Id.* at ¶¶ 90-91.  That same day, Plaintiff contacted GOER to report Defendant Leggett's conduct, which resulted in Plaintiff's work schedule briefly being changed to reduce her time working with Defendant Leggett at the Delmar Facility.  *Id.* at ¶¶ 93-96.  But according to Plaintiff, she was nevertheless forced to come into

5

contact with Defendant Leggett upon arriving at and departing from her shifts, and the Individual Defendants were purportedly involved in the decision to continue to schedule Plaintiff in a manner that would force her to continue coming into contact with Defendant Leggett. *Id.* at ¶¶ 97-98.

On October 21, 2019, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 100. However, on May 8, 2020, OPDD reassigned Defendant Leggett to serve as Plaintiff's direct supervisor notwithstanding her pending EEOC charge against him. *Id.* at ¶ 101. Immediately after receiving this information, Plaintiff called Defendant Wellington to express her concerns, and again, followed up with her via email the following day. *Id.* at ¶¶ 103, 105. Defendant Wellington disregarded Plaintiff's concerns and told Plaintiff that she did not need to respond to Plaintiff's email because it had "nothing to do with her." *Id.* at ¶¶ 104, 106.

Defendant Leggett continued to subject Plaintiff to discrimination and sexual harassment, including intentionally brushing up against Plaintiff's body in the kitchen of the Delmar Facility on July 5, 2020. *Id.* at ¶ 111. Additionally, in July 2020, Defendant Wellington changed Plaintiff's schedule to force her to work consecutive, unscheduled shifts and to force her to extend her shifts beyond her scheduled hours in violation of OPDD policy. *Id.* at ¶ 116. On August 8, 2020, Plaintiff attempted to contact Defendant Brown, Defendant Wellington's supervisor, to complain that Defendant Wellington was retaliating against her. *Id.* at ¶ 117. After not hearing back, she contacted Defendant Brown again on August 13, 2020, and he told her that he could not do anything about Defendant Wellington improperly scheduling Plaintiff. *Id.* at ¶ 118. On August 15 and August 16, 2020, Defendant Wellington again scheduled Plaintiff in a manner to force her to work consecutive, unscheduled 16.5 and 16-hour shifts, respectively. *Id.* at ¶¶ 123-124.

Beginning on December 12, 2021, Plaintiff went on leave from OPDD due to the alleged

mental and emotional harm caused by the Individual Defendants. *Id.* at ¶ 127. On January 31, 2022, Plaintiff was directed to attend a pre-termination interview with Amy Link, an OPDD Human Resources representative, based upon her absence for a "non-work-related injury or illness." *Id.* at ¶ 128. During the interview, Plaintiff explained that her inability to return to work was due to the harassment, discrimination, and retaliation she faced at OPDD, which she had previously detailed in numerous internal complaints and in a charge filed with the EEOC. *Id.* at ¶ 129.

On February 15, 2022, Plaintiff was informed by letter that she was terminated from OPDD, and alleges that the Individual Defendants participated in, contributed to, and proximately caused the decision to terminate Plaintiff in retaliation for her complaints and in an effort to aid, abet, and facilitate Defendant Leggett's discrimination, harassment, and retaliation, and the other Individual Defendants' retaliatory acts. *Id.* at ¶¶ 131-132. The Individual Defendants continue to be employed by OPDD and, according to Plaintiff, were not subjected to any discipline for their conduct. *Id.* at ¶ 134.

### C. Procedural History

Plaintiff commenced this action on January 14, 2025. Dkt. No. 1. On January 17, 2025, Plaintiff attempted to serve OPDD by serving the Summons and Complaint to an authorized agent at the New York State Office of the Attorney General. *See* Dkt. No. 4. On January 24 and January 29, 2025, Plaintiff attempted to serve the Individual Defendants by delivering and leaving copies of the Summons and Complaint with a person of suitable age and discretion at the Delmar Facility and by mailing the Summons and Complaint to the same address. *See* Dkt. Nos. 5, 9. On March 27, 2025, Defendants moved to dismiss the Complaint for insufficient service of process, lack of subject matter jurisdiction, failure to state a claim, and on statute of limitations grounds. Dkt. No.

11.

On March 30, 2025, Plaintiff filed an Amended Complaint.  Dkt. No. 15.  On March 31, 2025, Plaintiff served OPDD and the Individual Defendants by delivering and leaving copies of the Summons, Complaint, and Amended Complaint with an authorized agent at the New York State Office of the Attorney General, and by mailing copies of the Summons, Complaint, and Amended Complaint via certified mail to Willow Baer, the Acting Commissioner of the OPDD, at 44 Holland Avenue, Albany, New York 12229.  *See* Dkt. No. 16.  The envelope included the phrase "URGENT LEGAL MAIL" on the front in capital letters.  *Id.*  On April 2, 2025, Plaintiff also served Defendants Brown and Wright by delivering and leaving copies of the Summons and Amended Complaint with a person of suitable age and discretion at 500 Balltown Road, Schenectady, New York 12304 and One Marie Avenue, Albany, New York 12203, respectively, and mailing copies of the Summons and Amended Complaint via first class mail to the same addresses.  *See* Dkt. Nos. 18, 19.

### D.  The Motion

On April 8, 2025, Defendants requested that the Court apply its pending Motion to the Amended Complaint.  Dkt. No. 20.  Plaintiff opposed, *see* Dkt. No. 21, and on April 21, 2025, the Court granted Defendants' request.  Dkt. No. 22.  On May 1, 2025, Plaintiff filed its opposition to Defendants' Motion to dismiss the Amended Complaint.  *See* Dkt. No. 24.   On May 8, 2025, Defendants replied to Plaintiff's opposition, *see* Dkt. No. 25, and with leave of Court, Plaintiff filed a sur-reply in further opposition to the Motion on May 21, 2025.  Dkt. No. 29.

## III.    STANDARD OF REVIEW

### A.  Motion to Dismiss Pursuant to Rule 12(b)(5)

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to

dismiss a pleading for insufficient service of process. *See DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 353 (N.D.N.Y. 2014). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). To determine whether service of process was sufficient, courts look to materials outside the pleadings "to determine what steps, if any, the plaintiff took to effect service." *Flemming v. Moulton*, No. 13-cv-1324, 2015 WL 5147035, at *4 (N.D.N.Y. Sept. 1, 2015) (citations omitted). If the Court determines that service was insufficient, the court may dismiss the action, or in the alternative, grant leave to allow the plaintiff to cure the insufficiency. *See Muhammad v. Price Chopper Corp.*, No. 24-cv-291, 2025 WL 460836, at *2 (N.D.N.Y. Feb. 11, 2025) (citation omitted).

Pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure, service on a state agency may be effectuated by either (i) delivering a copy of the summons and complaint to the agency's chief executive officer, or (ii) by serving a copy of the summons and complaint in the manner prescribed by New York state law. *See* Fed. R. Civ. P. 4(j)(2). Section 307(2) of the New York Civil Practice Law and Rules ("CPLR") sets forth the requirements for serving process in New York on a state agency. According to Section 307(2) of the CPLR, service must be made by "(1) delivering the summons . . . to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, . . . to the chief executive officer of such agency, *and* by personal service upon the state in the manner provided by [Section 307(1)]." C.P.L.R. § 307(2) (emphasis added). Section 307(1) in turn provides that service upon the state is accomplished by delivering the summons to an assistant attorney general at an office of the Attorney General or to the Attorney General within the state. *Id.* at § 307(1). Additionally, for service by certified mail to be effective,

the front of the envelope must bear the legend "URGENT LEGAL MAIL" in capital letters. *Id.* at § 307(2).

Rule 4(e) of the Federal Rules of Civil Procedure governs the permissible methods of service on individual defendants. *See Flemming*, 2015 WL 5147035, at *5. "Under Rule 4(e), a summons can be served on an individual within the United States by 1) delivering a copy of the summons and of the complaint to the individual personally; 2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; 3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process; or 4) can be served pursuant to the law of the state where service is made." *Id.* (citing Fed. R. Civ. P. 4(e)(l)-(2)). "In New York, service of process may be effected by: (1) personal service; (2) delivery to 'a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served' and by either mailing the summons to the person to be served at his or her last known residence; (3) service on an agent; or (4) so-called 'nail and mail' service." *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016) (quoting C.P.L.R. §§ 308(1)-(4)). New York courts construe "actual place of business" to include "(1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." *Archa v. New York*, No. 24-cv-677, 2025 WL 2371018, at *4 (N.D.N.Y. Aug. 14, 2025) (internal quotation marks and citation omitted).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint

10

and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (internal quotation marks omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## IV.    DISCUSSION

### A.  Service of Process

Before a federal court can exercise personal jurisdiction over a defendant, valid service is

required. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). In this District, service of process is governed by Local Rule 4.1(b), which provides, in relevant part, that a plaintiff has sixty days from the filing of a complaint to effect service, and "[i]n no event shall service of process be completed after" ninety days, which is the deadline imposed by the Federal Rules of Civil Procedure. N.D.N.Y. L.R. 4.1(b); *see* Fed. R. Civ. P. 4(m). However, "[t]he Court has discretion in determining whether service of process should be executed within 60 days of the filing of the complaint as specified in the Local Rules, or within 90 days of the filing of the complaint as specified in the Federal Rules of Civil Procedure." *Burkhart v. Logan Beck Farm, LLC*, No. 23-cv-1426, 2024 WL 4493345, at *3 (N.D.N.Y. Oct. 15, 2024) (citation and brackets omitted); *see also Pensionsversicherungsanstalt v. Greenblatt*, 556 Fed. Appx. 23, 25 (2d Cir. 2014) (noting that a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules" (citation omitted)).

Here, Plaintiff commenced this action on January 14, 2025, by filing a Complaint. Dkt. No. 1. Then, on March 30, 2025, Plaintiff filed an Amended Complaint. Dkt. No. 15. "The subsequent filing of an amended complaint does not restart the ninety-day clock in which to serve; rather, an amended complaint must be served within ninety days after the date the original complaint was filed." *Butterworth v. Town of Greece*, No. 20-cv-6162, 2021 WL 241961, at *7 (W.D.N.Y. Jan. 25, 2021) (citation omitted); *see also Makell v. Cnty. of Nassau*, 599 F. Supp. 3d 101, 107 (E.D.N.Y. 2022) (noting that the date of the filing of the original complaint, not the amended complaint, remains controlling as to the defendants named in the original complaint). Thus, service must be completed by April 14, 2025. *See* Fed. R. Civ. P. 4(m).

### 1. OPDD

Under New York state law, service upon OPDD must be made by either (i) delivering the

summons to the chief executive officer of OPDD or to a person designated by the chief executive officer to receive service; or (ii) by mailing the summons via certified mail to the chief executive officer *and* by delivering the summons to an assistant attorney general at an office of the Attorney General or to the Attorney General within the state.  C.P.L.R. §§ 307(1)-(2) (emphasis added).

According to the affidavit of service filed by Plaintiff, on January 17, 2025, Plaintiff delivered the Summons and Complaint to an agent authorized to accept service on behalf of the New York State Attorney General's Office.  *See* Dkt. No. 4.  But there is no indication that Plaintiff mailed copies of the Summons and Complaint to OPDD's chief executive officer, or to a person designated by the chief executive officer to accept service in accordance with Rule 4(j)(2) or CPLR § 307(2).  "[S]ervice on the Attorney General's Office, even if accepted, without mailing the documents to the office of the official, is insufficient service of process under [CPLR] § 307(2)." *Reich v. City of New York*, No. 19-cv-6491, 2021 WL 6423983, at *5 (E.D.N.Y. Oct. 5, 2021) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021); *see also Spiteri v. Russo*, No. 12-cv-2780, 2012 WL 5422180, at *1 (E.D.N.Y. Nov. 6, 2012) (same).  Accordingly, Plaintiff's attempt to serve OPDD on January 17, 2025 was insufficient.

After Plaintiff filed an Amended Complaint, on March 31, 2025, Plaintiff (i) mailed copies of, *inter alia*, the Summons, Complaint, and Amended Complaint via certified mail in an envelope bearing the legend "URGENT LEGAL MAIL" to Willow Baer, the Acting Commissioner of OPDD; and (ii) delivered copies of, *inter alia*, the Summons, Complaint, and Amended Complaint to an agent authorized to accept service on behalf of the New York State Attorney General's Office.  *See* Dkt. No. 16.  Accordingly, Plaintiff effectuated service upon OPDD on March 31, 2025 in accordance with New York law by delivering the Summons and Amended Complaint to

13

the New York Attorney General's Office, and by mailing the same to the chief executive officer of OPDD via certified mail. *Cf. Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."); *see also Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427, 494-95 (E.D.N.Y. 2025) (finding service upon the New York Department of Health proper pursuant to CPLR § 307(2) by mailing the summons and amended complaint via certified mail, marked "URGENT LEGAL MAIL," to the Commissioner of the Department of Health and delivering the summons and amended complaint to an assistant attorney general at an office of the Attorney General).

Thus, Plaintiff has completed proper service of the Amended Complaint upon OPDD prior to the ninety-day deadline imposed by Fed. R. Civ. P. 4(m).

### 2. Defendants Wright and Brown[1]

On January 24 and January 29, 2025, Plaintiff attempted to serve Defendants Wright and Brown by delivering and leaving copies of the Summons and Complaint with someone of suitable age and discretion at the Delmar Facility and by mailing the Summons and Complaint to the same address. *See* Dkt. Nos. 5-2, 9. However, Defendants Wright and Brown had not worked at the Delmar Facility since February 13, 2019 and November 17, 2022, respectively. *See* Dkt. No. 11-5 at ¶ 4; Dkt. No. 11-6 at ¶ 4. Thus, Plaintiff's initial attempt to serve Defendants Wright and

---

[1] Defendants have not claimed that service of the original Complaint upon Defendants Leggett and Wellington was improper. *See* Dkt. No. 23 at ¶ 11. Since Plaintiff properly served Defendants Wellington and Leggett with the original Summons and Complaint, *see* Dkt Nos. 5, 5-1, subsequent service of the Amended Complaint effectuated via electronic filing on CM/ECF is proper under Rule 5 of the Federal Rules of Civil Procedure. *See Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20-cv-3479, 2022 WL 1747780, at *2 (S.D.N.Y. May 31, 2022) ("[O]nce a court has obtained personal jurisdiction over a defendant pursuant to service of process, it need not be obtained anew each time an amendment of the complaint is served." (internal quotation marks and citation omitted)).

Brown was also insufficient.

After Plaintiff filed her Amended Complaint, Plaintiff made a second attempt to serve Defendants Brown and Wright. On April 2, 2025, Plaintiff delivered and left copies of the Summons, Complaint, and Amended Complaint with a person of suitable age and discretion at Defendant Brown's and Defendant Wright's current places of business, *see* Dkt. No. 11-5 at ¶ 3; Dkt. No. 11-6 at ¶ 3, and mailed copies of, *inter alia*, the Summons, Complaint, and Amended Complaint via first class mail to the same addresses. *See* Dkt. Nos. 18, 19.

Accordingly, Plaintiff properly served Defendants Brown and Wright with the Amended Complaint pursuant to CPLR § 308(2) and Rule 4(e) prior to the ninety-day deadline. *See Dunham v. Town of Riverhead*, No. 19-cv-3289, 2020 WL 5820157, at *2 (E.D.N.Y. Sept. 30, 2020) (noting that CPLR § 308(2) "provides that personal service may be made by 'delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served,' *and* 'mailing the summons . . . to the person to be served at his or her actual place of business.'" (quoting C.P.L.R. § 308(2))).[2]

* * *

---

[2] Defendants also contend that the Amended Complaint should be dismissed against Defendants Wright and Brown pursuant to Rule 12(b)(4) for insufficient process due to Plaintiff's failure to comply with Rule 4(a)(1)(B). Dkt. No. 25-1 at 6. Defendants assert that the Summons served on Defendant Wright was directed to Defendant Brown, and the Summons served on Defendant Brown was directed to Defendant Wright. *Id*. Rule 4(a) requires, in relevant part, that a summons "'name . . . the parties' and 'be directed to the defendant.'" *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 203 (E.D.N.Y. 2017) (quoting Fed. R. Civ. P. 4(a)(1)(A)-(B)). "Put simply, to be compliant with Rule 4, the correct name of the defendant must appear on the summons." *Id.* But "where the identified defects in a summons are merely technical, the appropriate remedy is not to dismiss the claims but to serve an amended summons." *Wyatt v. Kozlowski*, No. 19-cv-159, 2021 WL 130978, at *7 (W.D.N.Y. Jan. 14, 2021) (internal quotation marks, citations, and alterations omitted); *see also Marquez*, 406 F. Supp. 3d at 204 (noting that "failure to properly name [a] defendant need not be fatal[;] . . . technical errors that are neither misleading nor prejudicial can be cured through an amendment, the right to which should be liberally granted"). Accordingly, Plaintiff is directed to serve amended summonses on Defendants Wright and Brown.

For the foregoing reasons, the Court finds that service was proper as to each Defendant pursuant to Rule 12(b)(5).

### B. Merits

#### 1. Title VII

Plaintiff brings her Title VII claims against Defendants for alleged sex discrimination, retaliation, and a hostile work environment. Dkt. No. 15 at ¶¶ 136-158.

##### i. OPDD[3]

Defendants do not move to dismiss Plaintiff's Title VII claims against OPDD. Rather, Defendants argue that for purposes of Title VII, all allegations of discrimination that occurred prior to December 25, 2018 must be precluded as untimely because Plaintiff filed her charge of discrimination with the EEOC on October 21, 2019, and thus, the 300-day limitations period for Plaintiff's Title VII claims began on December 25, 2018. Dkt. No. 11-8 at 22-27.[4] Specifically, Defendants contend that the continuing violation doctrine does not apply in the instant case because (i) the alleged discriminatory acts that occurred prior to December 25, 2018 were discrete acts of sexual harassment by Defendant Leggett and a failure to take corrective action by Defendant Wright; (ii) Plaintiff fails to allege a discriminatory policy or mechanism; and (iii) there is a fifteen-month gap between timely and untimely allegations. *See id.* at 26-27. Plaintiff does not respond to Defendants' arguments with respect to the timeliness of Plaintiff's Title VII claims.

"Under the continuing violation doctrine, if 'specific and related instances of

---

[3] Eleventh Amendment sovereign immunity does not bar Plaintiff's Title VII claims against OPDD. Congress has validly abrogated state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment with respect to Title VII. *See New York Communities for Change v. New York State Unified Ct. Sys./Off. of Ct. Admin.*, 680 F. Supp. 3d 407, 414 (S.D.N.Y. 2023).

[4] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) ("[A] sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related.") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). "In deciding whether incidents of harassment and discrimination are sufficiently related, courts have considered factors such as (1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action." *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 180 (N.D.N.Y. 2024) (quoting *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-cv-3363, 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018)).

First, with respect to Plaintiff's hostile work environment claim, the Court finds that the continuing violation doctrine applies because a hostile work environment claim "is a paradigmatic 'continuing violation.'" *See Wheeler v. Praxair Surface Techs., Inc.*, No. 21-cv-1165, 694 F. Supp. 3d 432, 450 (S.D.N.Y. Sept. 26, 2023) (citation omitted). Accordingly, since Plaintiff's hostile work environment claim encompasses alleged acts that occurred within the limitations period, *i.e.*, acts that took place after December 25, 2018, the acts predating the limitations period are properly considered part of Plaintiff's hostile work environment claim. *See Ferrando-Dehtiar*, 727 F. Supp. 3d at 181-82 (citation omitted).

Second, as to Plaintiff's sexual harassment and retaliation claims, the Court finds that

17

Plaintiff has alleged "sufficiently repetitious" acts of sexual harassment and retaliation to support the invocation of the continuing violation doctrine. *See Fitzgerald v. Henderson*, 251 F.3d 345, 362-63 (2d Cir. 2001). For example, Plaintiff alleges that Defendant Leggett committed acts of physical, verbal, and sexual harassment "[o]n no fewer than ten occasions beginning in . . . May 2016 through 2021." Dkt. No. 15 at ¶ 40. Additionally, while Plaintiff alleges that she initially reported Defendant Leggett's sexual harassment to Defendant Wright in September 2017, Plaintiff further alleges that she continued to make similar reports of harassment by Defendant Leggett in June and October 2019 to Defendant Wellington and other OPDD personnel. *See id.* at ¶¶ 43, 60-65, 85-93, 100. Furthermore, Plaintiff alleges that in retaliation for reporting Defendant Leggett's harassment, she was disciplined by Defendants Wellington and Leggett, was reassigned by the Individual Defendants to work under the direct supervision of Defendant Leggett, and was forced to work consecutive, unscheduled shifts as a result of Defendant Wellington changing her work schedule. *Id.* at ¶¶ 73-77, 101-102, 116. Accordingly, Plaintiff makes allegations of escalating harassment from Defendant Leggett and continued retaliation for reporting such harassment that are sufficiently frequent, close in time, and similar in nature to adequately allege continuing violations.

### ii.    Individual Defendants

With respect to Plaintiff's Title VII claims against the Individual Defendants, individuals are not subject to liability under Title VII. *See Pitter v. Target Corp.*, No. 20-cv-183, 2020 WL 8474858, at *5 (N.D.N.Y. Sept. 1, 2020); *see also Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 61-62 (2d Cir. 2016) (affirming dismissal of Title VII claims against individual defendants "because Title VII does not provide for individual liability" (collecting cases)). Accordingly, Plaintiff's Title VII claims against the Individual Defendants in

their individual capacity must be dismissed.

Moreover, to the extent that Plaintiff asserts Title VII claims against the Individual Defendants in their official capacities, such claims must also be dismissed because they are duplicative of the claims against OPDD. *See Barton v. Warren Cty.; Nathan York*, No. 19-cv-1061, 2020 WL 4569465, at *11 (N.D.N.Y. Aug. 7, 2020) (holding that a plaintiff cannot impose Title VII liability on an individual acting in his or her official capacity (citing *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410-11 (E.D.N.Y. 2010) (collecting cases, noting that courts in this Circuit have rejected Title VII official capacity claims, and in any event, such claims must be dismissed because they are duplicative of Title VII claims brought against the public entity)).

Accordingly, the Court dismisses Plaintiff's Title VII claims against the Individual Defendants in their individual and official capacities with prejudice.

### 2. NYSHRL

Turning to Plaintiff's NYSHRL claims, Plaintiff asserts claims of gender discrimination and retaliation in violation of Sections 296(1) and (7) of NYSHRL, and an aiding and abetting claim in violation of Section 296(6) of NYSHRL, against all Defendants. Dkt. No. 15 at ¶¶ 159-169. Defendants do not move to dismiss Plaintiff's aiding and abetting claim. *See* Dkt. No. 25-1 at 12.

#### i.    OPDD

As an initial matter, Eleventh Amendment sovereign immunity bars Plaintiff's NYSHRL claims against OPDD. "Without a State's express waiver or an act by Congress under Section 5 of the Fourteenth Amendment, the Eleventh Amendment bars federal courts from adjudicating claims against a State, as well as its agencies and agents." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023) (citation omitted). This sovereign immunity extends to "arms of the state,"

19

such as OPDD, as well as to its officials sued in their official capacities for money damages. *See Morgan v. NYS Atty. Gen.'s Off.*, No. 11-cv-9389, 2013 WL 491525, at *11 (S.D.N.Y. Feb. 8, 2013) (citation omitted).

"[D]istrict courts in this Circuit have repeatedly held that [NYSHRL] does not include a waiver of the State's sovereign immunity to suit in federal court." *Smith v. State Univ. of New York*, No. 00-cv-1454, 2003 WL 1937208, at *7 (N.D.N.Y. Apr. 23, 2003) (internal quotation marks and citation omitted); *see also Rose v. Albany Med. Ctr.*, No. 24-cv-1040, 2025 WL 2645539, at *3 (N.D.N.Y. Sept. 15, 2025) (collecting cases). Thus, OPDD, as a New York State agency, is entitled to sovereign immunity.

Accordingly, the Court dismisses Plaintiff's NYSHRL claims against OPDD with prejudice.

### ii.    Individual Defendants

To the extent that Plaintiff asserts NYSHRL claims against the Individual Defendants in their official capacities, such claims must also be dismissed because they are barred by the Eleventh Amendment for the same reasons discussed in *supra* Section IV(B)(2)(i). *See Serrano v. New York State Dep't of Env't Conservation*, No. 12-cv-1592, 2013 WL 6816787, at *14 (N.D.N.Y. Dec. 20, 2013) (dismissing plaintiff's NYSHRL claims against New York State employee defendants sued in their official capacities based on Eleventh Amendment immunity); *see also Fanelli v. New York*, 51 F. Supp. 3d 219, 233 (E.D.N.Y. 2014) (same).

Furthermore, Plaintiff's claims do not fall within the *Ex Parte Young* exception because Plaintiff does not seek prospective relief. Under the *Ex Parte Young* doctrine, state officials can be sued in federal court in their official capacities where a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Off. for Prot. &*

*Advoc. v. Stewart*, 563 U.S. 247, 255-56 (2011) (citation omitted). Such allegations are absent here, as Plaintiff's "alleged injuries stem only from past conduct with no plausible threat of future violations to [herself]." *Montes v. Albany Cnty.*, No. 24-cv-985 (AMN/DJS), 2024 WL 4562543, at *5 (N.D.N.Y. Oct. 24, 2024) (quoting *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. Oct. 8, 2020)).

Thus, the Court proceeds to evaluate the validity of Plaintiff's NYSHRL claims brought against the Individual Defendants in their individual capacities. Defendants argue that Plaintiff's gender discrimination and retaliation claims must be dismissed because Plaintiff fails to allege that the Individual Defendants had the authority to hire or fire Plaintiff. *See* Dkt. No. 11-8 at 19-20.

"An individual defendant is liable as an employer under § 296(1) 'when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' *i.e.*, the power to hire or fire." *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020) (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)). However, "[a] co-worker who lacks the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to a discrimination claim." *Tromblee v. New York State Off. for People with Developmental Disabilities*, No. 19-cv-638, 2023 WL 2655471, at *15 (N.D.N.Y. Mar. 27, 2023) (internal quotation marks, citations, and alterations omitted).

Here, Plaintiff alleges that each of the Individual Defendants has supervisory authority over Plaintiff, *see* Dkt. No. 15 at ¶¶ 11, 13, 15, 17, but Plaintiff does not allege whether any of the Individual Defendants possess the authority to hire or fire OPDD personnel. Accordingly, the Court dismisses Plaintiff's gender discrimination and retaliation claims pursuant to Sections 296(1) and (7) of NYSHRL, but allows the aiding and abetting claim against the Individual

21

Defendants in their individual capacities to proceed.[5]

### 3.  Section 1983

Lastly, Plaintiff asserts a Section 1983 claim for an alleged violation of the Equal Protection Clause against the Individual Defendants.  *See* Dkt. No. 15 at ¶¶ 170-176.  Defendants contend that Plaintiff's equal protection claim must be dismissed against the Individual Defendants because it is time barred, and in any event, Plaintiff fails to allege that the Individual Defendants were personally involved in Plaintiff's alleged wrongful termination.  *See* Dkt. No. 11-8 at 20-22.

### i.    Statute of Limitations

First, Defendants assert that Plaintiff's equal protection claim is time barred because it accrued on or about December 21, 2021, prior to Plaintiff taking a leave of absence, and thus, Plaintiff's claim is untimely.  *Id.* at 21.  Plaintiff fails to respond to Defendants' assertions regarding timeliness.

The statute of limitations for a Section 1983 claim in New York is three years.  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) (citations omitted).  The clock begins to run on the date that the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) *cert. denied*, 450 U.S. 920 (1981); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." (internal quotation marks and citation omitted)).  However, the continuing violation doctrine, *see supra* Section IV(B)(1)(i), can apply in the employment discrimination context when a "'plaintiff

---

[5] Because Defendants have not moved to dismiss Plaintiff's aiding and abetting claim under Section 296(6) of NYSHRL, the Court will not consider the sufficiency of those allegations.  *See, e.g., Frederick v. Cap. One Bank (USA), N.A.*, No. 14-cv-5460, 2015 WL 5521769, at *5 n.3 (S.D.N.Y. Sept. 17, 2015).

brings a § 1983 claim challenging a discriminatory policy,' and it acts to delay the commencement of the limitations period 'until the last discriminatory act in furtherance of the discriminatory policy.'" *Lefebvre v. Morgan*, No. 14-cv-5322, 2016 WL 1274584, at \*18 (S.D.N.Y. Mar. 31, 2016) (quoting *Shomo*, 579 F.3d at 181) (brackets omitted). "[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act[.]" *Shomo*, 579 F.3d at 181 (internal quotation marks, citations, and alterations omitted). "The chief purpose of the continuing violation doctrine is to protect the rights of plaintiffs where the earlier discrimination may only be recognized as actionable in the light of events that occurred later." *Gordon v. Semrug*, No. 14-cv-324, 2017 WL 2241966, at \*5 (W.D.N.Y. May 23, 2017) (internal quotation marks and citations omitted).

Here, Plaintiff alleges a series of individual acts of sexual harassment, discrimination, and retaliation, from May 2016 through 2021, that, when taken together, are sufficient to allege a violation of her constitutional rights. Due to the mental and emotional harm Plaintiff alleges that she suffered as a result of such acts, Plaintiff took leave from OPDD on December 12, 2021, and was subsequently terminated on February 15, 2022. Dkt. No. 15 at ¶¶ 127, 131.[6] Plaintiff's termination falls within the statute of limitations period.

Accordingly, the Court applies the continuing violation doctrine and finds that Plaintiff's equal protection claim is timely.

---

[6] Defendants incorrectly state that Plaintiff was terminated over a year after going on leave beginning December 12, 2021, when in fact, Plaintiff alleges that she was terminated on February 15, 2022, approximately two months after she took leave, following a pre-termination interview approximately two weeks prior. *See* Dkt. No. 25-1 at 10.

### ii.    Personal Involvement

In the alternative, Defendants contend that Plaintiff's equal protection claim must be dismissed because Plaintiff fails to allege that the Individual Defendants were personally involved in the decision to terminate Plaintiff's employment with OPDD, the only act allegedly undertaken by the Individual Defendants that is not time barred.  *See* Dkt. No. 11-8 at 20-22.  Because the continuing violation doctrine applies to Plaintiff's equal protection claim, Plaintiff's allegations are timely, and thus, Defendants' argument is without merit.

As to Plaintiff's equal protection claim more generally, this Circuit has held that sex-based discrimination may be actionable under Section 1983 as a violation of equal protection.  *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (citing *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996)).  "[Section] 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender."  *Id.*; *see also Peck v. Cnty. of Onondaga, New York*, No. 21-cv-651, 2021 WL 3710546, at *7 (N.D.N.Y. Aug. 20, 2021) ("Although there are certainly differences between § 1983, Title VII, and the NYSHRL, . . . the same elements apply to each, at least at the pleading stage" (citations omitted)).

To establish a defendant's individual liability in a suit brought under Section 1983, it is well-settled that "a plaintiff must show 'the defendant's personal involvement in the alleged constitutional deprivation.'"  *Enders v. Boone*, 658 F. Supp. 3d 70, 90 (N.D.N.Y. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted)), *aff'd sub nom. Siano Enders v. Boone*, No. 23-823, 2024 WL 3518058 (2d Cir. July 24, 2024); *accord Alexander v. City of Syracuse*, 132 F.4th 129, 160 (2d Cir. 2025).  Moreover, "a plaintiff advancing a claim of § 1983 discrimination in the Second Circuit [must] prove a defendant's personal

24

involvement by providing evidence that: (1) the defendant was a direct participant in the alleged violation; (2) the defendant failed to correct the violation after learning about it through a report or appeal; (3) the defendant created or allowed to continue a policy or custom under which the violation occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the violation; or (5) the defendant exhibited deliberate indifference by not acting on information suggesting that the violations were occurring." *Peck*, 2021 WL 3710546, at *9 (citing *Grullon*, 720 F.3d at 139). With respect to supervisory officials, after the Supreme Court's decision in *Iqbal*, the Second Circuit held that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). "Instead, a plaintiff must plead and prove 'that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). "That is to say, 'the violation must be established against the supervisory official directly.'" *Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 456 (N.D.N.Y. 2022) (quoting *Tangreti*, 983 F.3d at 618).

Here, Plaintiff alleges that each Individual Defendant was personally involved in unlawful harassment, discrimination, and retaliation against Plaintiff. Dkt. No. 15 at ¶ 172. Specifically, Plaintiff put forth numerous allegations that Defendant Leggett subjected her to discrimination, sexual harassment, and retaliation. For example, Plaintiff alleged that Defendant Leggett regularly subjected her to unwelcome, inappropriate physical contact on no fewer than ten occasions from May 2016 through 2021, including, *inter alia*, repeatedly calling Plaintiff on her personal cellphone and making inappropriate sexual remarks to her at the Delmar Facility beginning in May 2016, confronting Plaintiff and grabbing her arm shortly after she reported his conduct to Defendant Wright in September 2017, screaming inches from Plaintiff's face and slamming a door on her foot on June 29, 2019 in response to Plaintiff reporting his conduct to Defendant Wellington,

and intentionally brushing up against Plaintiff's body in the Delmar Facility's kitchen on July 5, 2020. *Id.* at ¶¶ 33-40, 43, 46-48, 60-64, 111. With respect to Defendant Wellington, Plaintiff alleges that Defendant Wellington repeatedly declined to take corrective action to address Defendant Leggett's sexual harassment and retaliatory conduct in June 2019, and instead wrote up Plaintiff for failing to follow the proper chain of command. *Id.* at ¶¶ 60-77. Plaintiff further alleges that Defendant Wellington refused to complete the required paperwork for Plaintiff to file a sexual harassment complaint with the GOER in July 2019. *Id.* at ¶¶ 90-91. Lastly, Plaintiff alleges that, despite being aware of Defendant Leggett's harassment, both Defendants Brown and Wright took part in the deliberations as to Defendant Leggett's promotion, participated in the decision to pretextually discipline Plaintiff in retaliation for her complaints regarding Defendant Leggett's conduct, and failed to take steps to stop Defendant Leggett's harassment. *Id.* at ¶¶ 43, 46, 54, 79, 84; *see also Pierro v. Hudson City Sch. Dist.*, No. 22-cv-670, 2023 WL 2742245, at *6 (N.D.N.Y. Mar. 31, 2023) (finding that plaintiff adequately plead personal involvement as to certain defendants because she alleged *inter alia* that "she made multiple reports to [the defendants] and they did not take corrective action to stop the conduct she reported," and that the defendants were responsible for promoting the individual allegedly engaging in harassing conduct as plaintiff's supervisor after she identified him as a co-worker who was harassing her).

For these reasons, the Court finds that Plaintiff's allegations are sufficient to establish the Individual Defendants' personal involvement in the alleged deprivation of Plaintiff's constitutional rights. Accordingly, the Court denies Defendants' Motion as to Plaintiff's equal protection claim.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 11, is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that (i) Plaintiff's Title VII claims against the Individual Defendants in their individual and official capacities and (ii) Plaintiff's NYSHRL claims against OPDD and the Individual Defendants in their official capacity be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's gender discrimination and retaliation claims under NYSHRL against the Individual Defendants in their individual capacity be **DISMISSED**; and the Court further

**ORDERS** that the Clerk issue amended summonses as to Defendants Wright and Brown; and the Court further

**ORDERS** that Plaintiff serve amended summonses on Defendants Wright and Brown; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2026
      Albany, New York

_Anne M. Nardacci_
Anne M. Nardacci
U.S. District Judge

27